UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LOGICAL OPERATIONS INC.,

Plaintiff,

Case # 15-CV-6646-FPG

v.

DECISION AND ORDER

30 BIRD MEDIA, LLC, et al.,

Defendants.

## INTRODUCTION

Logical Operations Inc. ("Logical") brings suit for copyright infringement against 30 Bird Media, LLC ("30 Bird") and three of its officers—Adam A. Wilcox, Benham Tchoubineh, and Alireza Choubineh (the CEO, President, and CFO of 30 Bird, respectively). Logical and 30 Bird are in the business of developing and publishing instructional materials. At issue in this case are the parties' competing lines of instructional manuals for certain computer programs. Logical alleges that Defendants designed their materials to mimic Logical's series and, by doing so, infringed on Logical's copyrights. ECF No. 59. Presently before the Court is Defendants' motion for summary judgment. ECF No. 72. Plaintiff opposes the motion. ECF No. 74. For the reasons that follow, Defendants' motion is GRANTED IN PART, in that summary judgment is granted on Logical's claim of copyright infringement but denied without prejudice on Defendants' counterclaim for attorney's fees.[1]

_____

[1] Defendants requested a hearing on the motion, ECF No. 75-9, but the Court concludes that a hearing is unnecessary.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

Consistent with the applicable standard of review, the following narrative consists of the undisputed facts and the disputed facts taken in the light most favorable to Logical. *See Smolen v. Wilkinson*, No. 11-CV-6001, 2013 WL 5417099, at *1 (W.D.N.Y. Sept. 26, 2013).

Logical develops, markets, and distributes training courseware for, among other things, various computer programs. At issue in this case are the "Axzo ILT Series line of . . . instructional manuals" for Microsoft Excel, Outlook, and Word. ECF No. 72-28 ¶ 28. Logical obtained the copyrights to these manuals when it acquired Axzo Press, the original publisher, in 2014.[2] *Id.* ¶ 29; *see also* ECF No. 74 at 9. The manuals in the Axzo ILT Series are intended to be used "for in-class instruction by an instructor to a student" and are sold in instructor and student versions.

---

[2] The entire genealogy of the Axzo ILT Series is more complex, but those details do not need to be recounted for present purposes. *See* ECF No. 74 at 6-9 (discussing history of Axzo ILT Series).

ECF No. 72-28 ¶ 33. The manuals are intended to prepare students for "specially designed Microsoft certification exams." *Id.*

Benham Tchoubineh founded 30 Bird in March 2014. Initially, 30 Bird did not publish instructional materials for the Microsoft suite of products. ECF No. 74-2 at 23. But, as Logical describes the sequence of events, 30 Bird undertook substantial efforts to develop a competing line of Microsoft Office coursework beginning in January 2015. At that time, 30 Bird hired Adam Wilcox as CEO and made him part owner of the company. ECF No. 72-28 ¶ 4. Wilcox had previously worked at Axzo Press before its acquisition by Logical, and he had been a designer on the Axzo ILT Series. Over the next months, 30 Bird went on to hire a number of former Logical and Axzo Press employees. *See* ECF No. 74 at 9-10. The crux of Logical's claim is that 30 Bird's designers had access to and used the Axzo ILT Series as the model for 30 Bird's series, substantially replicating its design, look, and feel.

In July 2015, Logical learned that 30 Bird was creating competing manuals, and it brought suit in October of that year. Logical brings one claim of copyright infringement against Defendants. ECF No. 59 at 9-11. Defendants have raised a counterclaim requesting attorney's fees under 17 U.S.C. § 505.

## DISCUSSION

Defendants seek judgment as a matter of law on both Logical's claim and their counterclaim for attorney's fees. Because Defendants develop no argument as to why they are entitled to attorney's fees under 17 U.S.C. § 505, the Court denies their motion on that issue without prejudice. *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) (stating that "[a]n award of attorney's fees and costs is not automatic" under § 505 and listing factors that a court should consider).

Turning to the claim for copyright infringement, Defendants argue, among other things, that summary judgment is appropriate because Logical cannot demonstrate that the 30 Bird manuals are substantially similar to the Axzo ILT series. More specifically, Defendants contend that the similarities between the competing series largely relate to unprotected elements. Defendants assert that once those unprotected elements are filtered out, there is no "room to find substantial similarity." ECF No. 72-29 at 11.

While not conceding that many of the similarities between 30 Bird's and Logical's manuals relate to unprotected elements, Logical focuses its opposition more on the argument that the Court should compare the works based on their total concept and feel, as opposed to dissecting the works into their component parts. Logical argues that under that standard, Defendants are not entitled to summary judgment.

In analyzing this dispositive issue, the Court begins by setting forth the relevant law. It then proceeds to analyze the elements of Logical's and 30 Bird's works that purportedly give rise to a claim for copyright infringement. Finally, the Court addresses the question of total concept and feel, concluding that Defendants are entitled to summary judgment.

## I. Relevant Law

To prove a claim of copyright infringement, a plaintiff must establish three elements: "1) that his work is protected by a valid copyright, 2) that the defendant copied his work, and 3) that the copying was wrongful." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014). The third element—wrongful copying—is at issue here.

### a. Wrongful Copying

Wrongful copying exists "where two works are 'substantially similar.'" *Laspata DeCaro Studio Corp. v. Rimowa GmbH*, No. 16 Civ. 934, 2018 WL 3059650, at *3 (S.D.N.Y. June 20,

2018).  The Second Circuit has articulated three standards that bear on the question of substantial similarity.  "In most cases, the test for substantial similarity is the 'ordinary observer test,' which queries whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999); *see also Zalewski*, 754 F.3d at 102 (stating that the question is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same").  "Although *dissimilarity* between some aspects of the works will not automatically relieve the infringer of liability, numerous differences tend to undercut substantial similarity."  *Disney Enters., Inc. v. Sarelli*, 322 F. Supp. 3d 413, 442 (S.D.N.Y. 2018) (internal citations and quotation marks omitted); *see Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (stating that no liability attaches "when the similarities between the protected elements of plaintiff's work and the allegedly infringing work are of 'small import quantitatively or qualitatively'").

The second standard is the "more discerning observer" test, which is used when a work is not "wholly original" and "incorporates elements from the public domain."  *Boisson v. Banian, Ltd*, 273 F.3d 262, 272 (2d Cir. 2001); *see also Zalewski*, 754 F.3d at 102.  That test requires "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed work."  *Belair v. MGA Ent., Inc.*, 503 F. App'x 65, 66 (2d Cir. 2012) (summary order) (internal quotation marks and brackets omitted).  That is, "where the allegedly infringed work contains both protectible and unprotectible elements, the test must be more discerning, excluding the unprotectible elements from consideration."  *Lynx Ventures, LLC v. Miller*, 45 F. App'x 68, 69 (2d Cir. 2002) (summary order) (internal quotation marks omitted).

The third standard—known as the "total concept and feel" standard—operates to clarify and limit the "more discerning observer" test. Taken to an extreme, the "more discerning observer" test could be understood to require a court to "dissect the works at issue into separate components and compare only the copyrightable elements." *Boisson*, 273 F.3d at 272. But a "piecemeal comparison" of each copyrightable element, viewed in isolation, may fail to fully account for the author's original expression. *Mena v. Fox Entertainment Grp., Inc.*, No. 11 Civ. 5501, 2012 WL 4741389, at *5 (S.D.N.Y. Sept. 29, 2012). For example, a street map consists of a number of unprotectible, public-domain facts—"such as street locations, landmasses, bodies of water and landmarks, as well as color"—but through the creative arrangement, structure, and organization of those facts, the street map may warrant protection under copyright law. *Boisson*, 273 F.3d at 272-73. Any analysis of substantial similarity must therefore account for the fact that copyright infringement may result "not only through literal copying of a portion of [a work], but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of public domain compositions, if any, together with the development and representation of wholly new motifs and the use of texture and color, etc.—are considered in relation to one another." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003).

For that reason, the Second Circuit requires courts to be "principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work, as instructed by [their] good eyes and common sense." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (citations and internal quotation marks omitted). A court must analyze not only whether a defendant has misappropriated particular protectible elements of the plaintiff's work, but also "whether the alleged infringer has misappropriated the

original way in which the author has selected, coordinated, and arranged the elements of his or her work." *Id.* (internal quotation marks omitted); *see also Tufenkian*, 338 F.3d at 134 ("[T]he total-concept-and-feel locution functions as a reminder that, while the infringement analysis must *begin* by dissecting the copyrighted work into its component parts in order to clarify precisely what is not original, infringement analysis is not *simply* a matter of ascertaining similarity between components viewed in isolation.").

Regardless of the standard being applied, summary judgment on a claim of copyright infringement is appropriate "[i]f the similarity between the two works 'concerns only noncopyrightable elements' or 'no reasonable trier of fact could find the works substantially similar.'" *Porto v. Guirgis*, 659 F. Supp. 2d 597, 610 (S.D.N.Y. 2009) (quoting *Crane v. Poetic Prods. Ltd.*, 549 F. Supp. 2d 566, 569 (S.D.N.Y. 2008)).

### b.  Protectible and Nonprotectible Elements

The "more discerning observer" test is premised on the observation that "even works which express enough originality to be protected also contain material that is not original, and hence that may be freely used by other designers." *Tufenkian*, 338 F.3d at 132. A "fundamental rule of copyright law is that it protects only . . . those aspects of the work that originate with the author himself," and an author obtains no monopoly over elements derived from the public domain merely because he incorporates them into a creative work. *Zalewski*, 754 F.3d at 102 (quoting 17 U.S.C. § 102(a)). In applying the "more discerning observer" test, a court must examine the elements of the plaintiff's work and determine which elements are protectible and which are unprotectible. *See Tufenkian*, 338 F.3d at 134 & n.8; *see also Zalewski*, 754 F.3d at 106-07.

"Numerous doctrines separate protectable expression from elements of the public domain." *Zalewski*, 754 F.3d at 102. The basic "raw materials" of creative works, including colors, letters,

and geometric forms, are unprotected. *Tufenkian*, 338 F.3d at 132. Similarly, "ideas, concepts, principles [and] processes" are "in the common domain" and are "the inheritance of everyone." *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992). This is so even if the idea originates with the author. *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 440 (S.D.N.Y. 2011) ("[O]nly a copyright owner's particular expression of his or her idea is protected, not the idea itself."); *see also Tufenkian*, 338 F.3d at 132 n.4.

Other principles include "scènes-à-faire" and the "merger" doctrine. The former "teaches that elements of a work that are 'indispensable, or at least standard, in the treatment of a given topic'—like cowboys, bank robbers, and shootouts in stories of the American West—get no protection." *Zalewski*, 754 F.3d at 102; *see, e.g.*, *Civility Experts Worldwide v. Molly Manners, LLC*, 167 F. Supp. 3d 1179, 1196 (D. Colo. 2016) (finding selection of topics in instructional manuals on manners and etiquette unprotected scènes-à-faire where any such manual "will likely cover these sorts of topics"). The merger doctrine "instructs that some ideas can only be expressed in a limited number of ways—single words or colors for example. When expression is so limited, idea and expression 'merge.' Expressions merged with ideas cannot be protected, lest one author own the idea itself." *Zalewski*, 754 F.3d at 102-03; *see, e.g.*, *Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc.*, 397 F. Supp. 2d 245, 256-57 (D. Mass. 2005) (unadorned step-by-step instruction on boiling wool felt implicated merger doctrine, because of limited number of ways in which to convey the relevant information).

However, as noted above, even unprotectible elements or features may receive protection to the extent that the author selects, coordinates, arranges, or otherwise expresses those elements in an original way. *See Gaito*, 602 F.3d at 66; *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co, Inc.*, 499 U.S. 340, 349 (1991) ("[I]f the selection and arrangement [of a factual compilation] are

original, these elements of the work are eligible for copyright protection.").  For example, while facts are unprotectible, the expression of those facts in an original way may be.  The Seventh Circuit provides a helpful illustration:

> Einstein's articles laying out the special and general theories of relativity were original works even though many of the core equations, such as the famous $E=mc^2$, express "facts" and therefore are not copyrightable.  Einstein could have explained relativity in any of a hundred different ways; another physicist could expound the same principles differently.

*Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 979 (7th Cir. 1997); *see also Zalewski*, 754 F.3d at 102 ("[A]ny author may draw from the history of English-speaking peoples, but no one may copy from *A History of the English–Speaking Peoples*.  Any artist may portray the Spanish Civil War, but no one may paint another *Guernica*.").  Copyright protection can be afforded to the manner in which an author selects, coordinates, or expresses unprotectible elements in a work so long as it possesses "some minimal degree of creativity."  *Kregos v. Associated Press*, 937 F.2d 700, 703 (2d Cir. 1991) (quoting *Feist*, 499 U.S. at 345).

The works in dispute in this case occupy a similar place to nonfiction literature.  Instructional manuals, textbooks, guides, and the like present factual information or functional directions.  Those facts and directions, standing alone, are not copyrightable.  *See Churchill Livingstone, Inc. v. Williams & Wilkins, a Div. of Waverly, Inc.*, 949 F. Supp. 1045, 1051 (S.D.N.Y. 1996) (comparing two science textbooks and noting that "the facts underlying the science of embryology . . . are not copyrightable"); *see also Lambing v. Godiva Chocolatier*, 142 F.3d 434, 1998 WL 58050, at *1 (6th Cir. Feb. 6, 1998) (table opinion) (stating that recipes are not afforded copyright protection because they are functional directions for achieving a result).  Even the expression, selection, and arrangement of the facts in such a work may not be protectible to the extent they are driven by demands outside of the author's originality.  *See, e.g., McGraw-Hill, Inc.*

*v. Worth Publishers, Inc.*, 335 F. Supp. 415, 420-21 (S.D.N.Y. 1971) (noting factors that restrict the range of "literary options in creating an economics textbook," including the nature of the subject matter and the demands of the market); *cf. Zalewski*, 754 F.3d at 106 (finding that certain elements of architectural designs were unprotected because they were a "function of consumer expectations and standard house design generally"). That being said, an author's "creative choices in describing [factual] processes and systems, including the works' overall arrangement and structure, are subject to copyright protection." *Situation Mgmt. Sys., Inc. v. ASP Consulting LLC*, 560 F.3d 53, 61 (1st Cir. 2009).

## II. Comparison of Exemplar Works

The Court now applies the law to the present works. The Court does not possess the approximately seventy books that are in dispute, but Logical has provided a copy of its book, *Microsoft Excel 2010, Basic, Instructor's Edition* (the "Axzo Manual"), and a copy of 30 Bird's competing volume, *Microsoft Excel 2010 Level 1, Instructor Edition* (the "30 Bird Manual"). Given that these books contain the alleged similarities underlying Logical's claim, and because the parties do not argue otherwise, the Court treats these books as exemplars of all of the books in dispute.

The Court uses the "more discerning observer" test, as the Axzo Manual contains both protectible and unprotectible elements. *See Boisson*, 273 F.3d at 272. The Court first examines the relevant elements of the manuals to determine which are protectible and which are unprotectible. The Court does not engage in an exhaustive comparison of each and every minute detail—as such an analysis would be unnecessary and counterproductive—but rather confines its evaluation to the most salient elements. *See Gaito*, 602 F.3d at 66; *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 909 (3d Cir. 1975) ("The more the court is led into the finer points of the

[work], the less likely it is to stand upon the firmer, if more naive, ground of its considered impressions after its own perusal." (citing *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930)).  After determining which elements are protectible, the Court examines the total concept and feel of the manuals.

### a.  Elements in the Parties' Works

### i.  Overall Page Appearance, Layout, and Approach

Logical contends that the manuals are similar in their "overall page appearance, layout, and approach."  ECF No. 59 ¶ 30(a).  By this, Logical appears to assert that the internal formatting of the manuals—spacing, page width, font, headers, etc.—are similar.  There is authority for the proposition that book designs are not in themselves copyrightable.  *See, e.g.*, *F. A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 513-14 (E.D. Pa. 2005); 2 Patry on Copyright § 4:19 (noting that Copyright Office denies registration to the "arrangement, spacing, or juxtaposition of text matter that is involved in book design").  This is because a layout "falls within the realm of uncopyrightable ideas."  Registration of Claims to Copyright: Notice of Termination of Proposed Rulemaking Regarding Registration of Claims to Copyright in the Graphic Elements Involved in the Design of Books and Other Printed Publications, 46 Fed. Reg. 30651, 30653 (June 10, 1981).

On the other hand, there is also authority that the creative arrangement and coordination of textual and graphic elements is protectible.  *See Eagle Access Control Sys., Inc. v. USA Power Gate, Inc.*, No. CV 07-3789, 2008 WL 11334485, at *4 (C.D. Cal. Dec. 18, 2008) (discussing layouts of manuals in addressing substantial similarity); *Livingstone*, 949 F. Supp. at 1054 (stating that author's selection and arrangement of illustrations in medical textbook can be creative and original); *see also Sadhu Singh Hamdad Trust v. Ajit Newspaper Advertising, Mktg. & Commc'ns*,

*Inc.*, 503 F. Supp. 2d 577, 589-90 (E.D.N.Y. 2007) (collecting cases where layout and manner of presentation were considered in concluding that work was entitled to copyright protection). Thus, while an abstract book design may not, standing alone, provide grounds for infringement, the manner in which specific text and graphics are selected and arranged in the Axzo and 30 Bird Manuals may be considered in evaluating total concept and feel.

### ii. Content

Importantly, Logical does not assert that Defendants engaged in any verbatim copying of its textual or graphical content. Nor does it point to any instances where Defendants reproduced such content with minor or immaterial variations. Its allegations are narrower. Logical argues that, like the Axzo Manual, the 30 Bird Manual: (1) uses some of the same words in its exercise instructions (*e.g.*, instructing students to "Click," "Select," or "Press"); (2) tells students to include the word "My" in document names (*e.g.*, instructing students to save a file as "My Workbook"); and (3) uses fake companies as part of its exercises. Logical also contends that the 30 Bird Manual adheres to the same bolding, italicization, and font conventions as the Axzo Manual.

These elements are not protectible. Single words, short phrases, and standard fonts are not generally protectible subject matter. *See TufAmerica, Inc. v. WB Music Corp.*, 67 F. Supp. 3d 590, 594 n.18 (S.D.N.Y. 2014); *Sadhu*, 503 F. Supp. 2d at 589. The idea of italicizing or bolding certain important words is not copyrightable. And the idea of using fake companies in exercises is not copyrightable: while a particular instructional fact pattern may be protectible, the mere notion of using such hypothetical scenarios is not. *Cf. Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies, Inc.*, 458 F. Supp. 2d 252, 259 (E.D. Pa. 2006) (discussing multiple-choice questions).

### iii.   Topics and Topic Structure

Logical identifies "the generalized topic structure" as one element of similarity between its manuals and 30 Bird's manuals.  ECF No. 59 ¶ 30(e).  If Logical is simply arguing that its selection of topics is protectible, the Court is not convinced.  Both manuals contain a similar selection of topics, but that appears to be a function of the subject matter and the manuals' particular purpose— *i.e.*, to prepare students for Microsoft certification exams.  One would expect that a manual teaching basic skills for Microsoft Excel would, necessarily or customarily, embrace certain topics, making the selection of topics akin to scènes-à-faire.  *See Molly Manners*, 167 F. Supp. 3d at 1196; *see also McGraw-Hill, Inc.*, 335 F. Supp. at 420-21.  This is so particularly if the manual is geared toward preparing students for a certain examination.  *Cf. Lyons v. Am. Coll. Of Veterinary Sports Medicine & Rehab., Inc.*, 997 F. Supp. 2d 92, 110-11 (D. Mass. 2014) (selection of topics not entitled to protection because they were dictated by policies and procedures of organization).  This expectation is borne out by the record: other competing manuals adopt a similar selection of topics. *See* ECF Nos. 72-7, 72-8, 72-13.

The arrangement of topics is another matter, however.  Granted, Defendants are on strong ground when they argue that a topic structure that starts "with the simplest lessons and mov[es] through to more complex lessons" is unprotectible.  ECF No. 75-8 at 7.  The idea of using such a progression in an instructional text is certainly not protectible, and the other manuals in the record establish that, in this context, such progression amounts to scènes-à-faire.  *See* ECF Nos. 72-7, 72-8, 72-13; *see also Hassett v. Hasselbeck*, 177 F. Supp. 3d 626, 631 (D. Mass. 2016) (order of topics in recipe book—"introductory chapters providing general tips followed by chapters of recipes organized by types of meals"—constituted unprotected scènes-à-faire).  Indeed, structuring a manual or guide in this way would seem to be attributable more to common-sense notions of

instructional design than to a creative or aesthetic decision.[3]  *Cf. Costello, Erdlen & Co., Inc. v. Winslow, King, Richards & Co.*, 797 F. Supp. 1054, 1063 (D. Mass. 1992) (noting that similarities in the organization of job guides stemmed in part from the "natural progression" of obtaining employment).

But the doctrine of scènes-à-faire does not extend to the creative arrangement of specific topics within that overall progression.  This is because the Court cannot conclude as a matter of law that the Axzo Manual's specific grouping and arrangement of topics is indispensable or standard for this subject matter.  The manuals in the record follow an overall progression from simple to more complex topics, but they vary in how they group and order topics.  *See, e.g.*, ECF No. 72-7 at 4-7; ECF No. 72-8 at 4-5.  Therefore, the Court declines to exclude the Axzo Manual's particular arrangement of topics from the "total concept and feel" calculus.

### iv.  Organization of Each Chapter

Logical next identifies the organization of each chapter as a similar element between the manuals.  Both manuals do share a parallel arrangement.  Each chapter begins with a page that displays the objectives for the chapter and estimates the time to complete the chapter.  A chapter is then divided into a number of subchapters on specific topics.  A subchapter starts with an explanation of the topic, which may be accompanied by charts, graphics, and step-by-step instructions.  The subchapter provides an exercise for the student to reinforce the topic.  Finally, each chapter ends with a summary of the lessons learned in the chapter and an additional exercise for the student to complete.  In addition, both manuals include review questions.

---

[3] Logical's instructional-design expert notes that "courseware that is organized with general, lower-level concepts first with content progressing in complexity" is evidence of the use of "Subsumption Theory"—a theory of learning.  ECF No. 72-6 at 12.

The Court is skeptical that copyright protection could be afforded to the use of this general arrangement, as it appears to reflect a pedagogical method or technique. *See* 17 U.S.C. § 102(b) (barring from copyright protection "any idea, procedure, process, system, method of operation, concept, [or] principle"). Adam Wilcox stated in his deposition that "everyone" in the industry uses the same basic instructional-design theory, which he attributed to David Ausubel. ECF No. 74-2 at 12. As Michelle L. Wescott—Logical's instructional-design expert—explains, this theory contemplates a particular arrangement for a lesson: a lesson should begin with a short summary of the lesson's aim and how the lesson relates to current knowledge, followed by an explanation of the relevant concepts and "[m]eaningful practice." ECF No. 72-6 at 12. Wescott opines that "a book's overall structure and use of features . . . is usually driven by the learning theory used." *Id.* That is, the sequence and manner of instruction depends in part on the "learning theory" to which the author adheres.[4] *See id.* at 11-12. Under § 102(b), however, Logical can hold no monopoly over the idea of using a specified pedagogical technique—that is, the use of a particular sequence and structure of instruction—to teach Microsoft Excel skills. The overall structure of each chapter is not, standing alone, protectible. *See Kepner-Tregoe, Inc. v. Carabio*, No. 8-71025, 1979 WL 1072, at *6 (E.D. Mich. Apr. 20, 1979) (concluding that company that developed management training program had "no monopoly on any pedagogical technique" that it used in its program).

But again, recognizing that the overall structure of each lesson is perhaps unprotectible does not mean that the Court may not consider the disputed works' lesson structures in assessing the total concept and feel. Many creative decisions must be made in the course of laying out a lesson in accordance with that general framework. Among other things, one must select how many

---

[4] To be sure, Wescott also emphasizes that "there is still much room for variation" and that "learning theory does not dictate the overall look and feel of a book." ECF No. 72-6 at 12.

concepts to include in a single lesson; decide how much explanation to provide before giving an exercise; decide how many exercises and activities to include; and, of course, decide how to express the content of the lesson—how a topic is explained, what sorts of graphics are used to illustrate concepts, the particular phrasing and instructions for exercises and review questions, etc. These creative choices are not excluded when assessing substantial similarity.

## v. Two-Column Table for Exercises



An exercise in the 30 Bird Manual.  ECF No. 74-2 at 171.          An exercise in the Axzo Manual.  ECF No. 74-2 at 366.

An element of particular concern to Logical is Defendants' use of a two-column table to convey exercises to readers.  As can be seen above, to reinforce the topic of each lesson, both manuals have activities for students to perform, and they present those exercises in tabular form. Logical identifies the following similarities between the tables used in the manuals: (1) use of a two-column vertical format; (2) use of a shaded background;[5] (3) instruction on the left and

_____

[5] The 30 Bird Manual uses three shades of blue to divide each section of their tables, while the Axzo Manual uses one uniform shade of gray.  *Compare* ECF No. 74-2 at 171, *with id.* at 366.

explanation on the right; (4) similar column headers ("Do This" and "How & Why" in the 30 Bird Manual as compared to "Here's how" and "Here's why" in the Axzo Manual); (5) use of bolding to highlight certain words in the exercises; (6) directing students to rename files with the word "My" (*e.g.*, asking students to save a worksheet as "My Budget"); (7) use of similar words, including "Click," "Select," "Observe," "Press," and "Enter"; and (8) use of fake companies in exercises.

Logical correctly concedes that it can hold no copyright over the idea of using a two-column table to present instructional exercises. ECF No. 74 at 19; *Molly Manners*, 167 F. Supp. 3d at 1197 n.11 (idea of sticker chart to encourage good behavior in children is unprotectable idea). Any protection extends, if at all, only to Logical's particular expression of that idea. But Defendants contend that the merger doctrine renders Logical's exercise tables unprotectible because "there are a limited amount of ways to convey information in a table." ECF No. 72-29 at 14. The Court disagrees that the merger doctrine is appropriately applied here.

As discussed previously, the merger doctrine applies to bar protection of expression "in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *Kregos*, 937 F.2d at 705. Here, the record shows that there are numerous ways of designing and organizing a two-column table to convey information on Microsoft Excel topics. *See* ECF No. 72-7 at 13; ECF No. 72-8 at 11; ECF No. 72-9 at 10. Choices include, of course, the content conveyed in the table, but also the colors, shading, italicization, and bolding used, the graphics employed, the sizing of each cell, row, and column, and the size of the table as a whole. Like other restrictive instructional methods—for example, multiple-choice questions—presenting information in a two-column table certainly confines the range of creative expression, but it does not preclude or so limit such expression as to

implicate the merger doctrine. *See Nat'l Conference of Bar Exam'rs*, 458 F. Supp. 2d at 259 (noting that test questions can constitute original expression by virtue of their "wording, particularized facts, and answer choices"). The Axzo Manual's unique expression of its instructional exercises—*i.e.*, the content of those exercises in conjunction with the design of its two-column tables—may be considered in assessing substantial similarity.

### vi. Instructor Cues and Exam Objectives

Logical identifies the inclusion and arrangement of instructor cues and exam objectives as similar elements. Both manuals use what the parties call an "instructor cue," which is a phrase or icon set off in the left margin that alerts the instructor to particular material. For example, one of the instructor cues is a small icon that indicates to the instructor that there is a PowerPoint slide associated with the adjacent item. *See* ECF No. 74-2 at 349. In the Axzo Manual, that icon is an image of an overhead projector with no color, shading, or border. In the 30 Bird Manual, that icon is an image of a projection screen with a blue background and black border. Both manuals also have an instructor cue to alert the instructor that the adjacent material is associated with a Microsoft Office Specialist exam objective. In the Axzo Manual, the instructor cue is the italicized number of the objective (*e.g.*, "*Objective 1.1.1*"). In the 30 Bird Manual, the instructor cue is an icon of a black checkmark with a purple background and black border. In addition, both manuals identify exam objectives in the body of the text: the Axzo Manual identifies all of the pertinent exam objectives at the beginning of each subchapter, while the 30 Bird Manual identifies each objective number with the applicable material.

Defendants argue that the use of instructor cues constitutes scènes-à-faire. The *idea* of using instructor cues is unprotectible, but even stock concepts can be protectible to the extent that their selection, coordination, and arrangement "reflect[] a particular expression of ideas." *Williams*

*v. A & E Television Networks*, 122 F. Supp. 3d 157, 162 (S.D.N.Y. 2015). Here, the issue is whether the 30 Bird Manual copies the look and arrangement of the Axzo Manual's instructor cues. It is an appropriate element to consider in evaluating total concept and feel. For the same reasons and to the same extent, the Court may consider the element of exam objectives.

### b. Total Concept and Feel

Having determined which of the salient individual elements are protectible, the Court now turns to the task of "comparing the contested [work's] 'total concept and overall feel' with that of the allegedly infringed work." *Gaito*, 602 F.3d at 66 (quoting *Tufenkian*, 338 F.3d at 133). In doing so, the Court may not rely on amorphous notions of "feel" and "look," but must instead "identify precisely the particular [creative] decisions—original to the plaintiff and copied by the defendant[s]—that might be thought to make the [works] similar in the aggregate." *Tufenkian*, 338 F.3d at 134.

The Court concludes that a reasonable observer could not find the Axzo Manual and 30 Bird Manual substantially similar. Although the Court is persuaded that the Axzo Manual contains protectible expression, the Court is not convinced that the 30 Bird Manual has copied such expression to the point of substantial similarity. In arguing to the contrary, Logical does not assert that the 30 Bird Manual copied any *particular* exercise, mimicked any *particular* topic, or replicated any *particular* review question.[6] In short, Logical does not argue that the 30 Bird

---

[6] Wescott identifies two similarities in content. First, she notes that the 30 Bird Manual contains a list of certain aspects of the Excel interface which, in part, follows the same order as a list contained in the Axzo Manual. *Compare* ECF No. 74-2 at 170, *with id.* at 363. The lists do not fully overlap, however, and each manual provides different descriptive content of the Excel interface. In short, it is a very minor similarity. Second, Wescott states that in one exercise, both the 30 Bird Manual and the Axzo Manual instruct students to hover over the "Bold" button to reveal a "screen tip." *See* ECF No. 72-6 at 18-19. Again, this is a minor similarity that does not change the Court's analysis.

Manual copied any of the Axzo Manual's substantive content.  Rather, Logical principally asserts that the 30 Bird Manual copied certain design and layout features of the Axzo Manual.

This is problematic because, as the Court has already noted, there is authority for the proposition that book designs are unprotectible ideas.  In targeting the 30 Bird Manual's design and layout in the abstract, divorced from any particular textual or graphical content, Logical veers into the realm of challenging Defendants' use of similar ideas, rather than Defendants' use of its expression.

This is not to say that the selection, arrangement, and coordination of substantive elements is irrelevant to the analysis.  As discussed above, creative choices can be made with respect to the selection and arrangement of text, graphics, and topics within a book.  Indeed, the substantive content of an instructional text must be expressed through layout and design choices.  But the Court cannot simply disregard content and compare the abstract design principles on which the manuals are based.  Just as it would be difficult to conclude that one wrongfully copied another's chart without considering the content of each chart, the Court cannot analyze whether Defendants wrongfully copied the total concept and feel of the Axzo Manual without considering the substantive content of each manual.  When the issue is framed in this way, there is no reasonable inference of substantial similarity.

Some examples may be helpful.  Regarding the two-column tables, while Logical lists several design elements that make the 30 Bird Manual's tables *look* similar to the Axzo Manual's, omitted from its discussion is the fact that the content of the tables—*i.e.*, the instructions, the explanatory content, and graphics—are largely dissimilar.  The tables displayed in Section II(a)(v) above are illustrative.  Both tables instruct students on certain basic components of the Excel interface.  Although there is some minor overlap in their respective directions, as a whole the tables

diverge in their expression of and emphasis on certain concepts.  The 30 Bird Manual highlights the column and row numbers and the quick access toolbar, while the Axzo Manual highlights the title bar, illustrations tab, and status bar.  In explaining the ribbon tab, the Axzo Manual states: "By default, Home is active."  ECF No. 74-2 at 366.  The 30 Bird Manual states: "This is the large area of buttons, lists, menus, and palettes at the top of the window.  It's organized into tabs (File, Home, Insert, and so on), and within in [sic] a tab, into groups."  *Id.* at 171.  The tables also differ as to which graphics they include: the Axzo Manual's only graphic is of the title bar, while the 30 Bird Manual has graphics of a "screen tip" and the quick access toolbar.  These differences in the tables only increase in later chapters, as each manual creates its own hypothetical scenarios to test students in the applicable concepts.  *Compare, e.g.*, *id.* at 195-96, *with id.* at 383.

When substantive content is considered along with the design features, the manuals' tables do not convey substantially similar expression.  It is akin to multiple-choice questions: one instructor is free to use the same format to test students in the same topics as another instructor, so long as he does not copy the particular wording and answers of the other.  *See Nat'l Conference of Bar Exam'rs*, 458 F. Supp. 2d at 259.

The same can be said of the 30 Bird Manual's overall arrangement of topics and organization of each chapter.  Similarities in chapter arrangement or structure matter less than the expressive content contain therein.  *Cf. Morrison v. Solomons*, 494 F. Supp. 218, 225 (S.D.N.Y. 1980) ("The significant question is not whether titles of subchapters and chapters are the same but rather whether the explanation or treatment of the subject matter within them is substantially similar.").  On the topic of functions, for example, the manuals display different graphics and provide different explanations, exercises, and review questions.  Indeed, the Axzo Manual provides instruction on several functions that are omitted from the 30 Bird Manual.  Similarly,

although both manuals use instructor cues and arrange them in a similar manner, the cues themselves are aesthetically distinct. In these respects, the expression contained in each manual's "function" topic is distinct, notwithstanding similar design features and subject matter.

The Court arrives at the same conclusion with respect to the total concept and feel of the works as a whole. The similarities that exist between these manuals largely relate to unprotectible ideas or minor elements like layout and arrangement. In terms of substantive content, Logical fails to identify any significant similarities between the manuals, and the Court's review does not suggest otherwise. Because the overall expression contained in the manuals is so dissimilar—even considering substantive content and design together—the Court concludes, as a matter of law, that the manuals cannot be found substantially similar.

Accordingly, the Court concludes that a reasonable trier of fact could not find in Logical's favor on the element of wrongful copying, and Defendants are entitled to summary judgment on the copyright infringement claim.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment (ECF No. 72) is GRANTED IN PART. With respect to Logical's claim for copyright infringement, Defendants' motion is granted, but with respect to Defendants' counterclaim for attorney's fees, their motion is denied without prejudice.

IT IS SO ORDERED.

Dated: December 17, 2018
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court